# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EILENE J. MOSES,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of the Social** )<br>**Security Administration,**[1] )<br>)<br>**Defendant.** ) | Case No.  CIV-12-395-SPS |

## OPINION AND ORDER

The claimant Eilene J. Moses requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 6, 1984, and was twenty-six years old at the time of the most recent administrative hearing (Tr. 227). She stopped attending school in the sixth grade and later completed the ninth grade, attending special education classes, and has no past relevant work (Tr. 100, 218). The claimant alleges that she has been unable to work since October 6, 1984, due to learning problems and borderline intellectual functioning (Tr. 97).

## Procedural History

On December 7, 2005, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Ralph L. Wampler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 28, 2008 (Tr. 8-15). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-08-289-FHS-SPS and remanded the case to the ALJ with instructions to consider whether the claimant had a learning disability sufficient to qualify as an "other mental impairment" under Listing 12.05C (Tr. 269-279). The ALJ conducted a second administrative hearing and again determined that the claimant was

not disabled in a written opinion dated December 22, 2010 (Tr. 212-219). The Appeals Council denied review, so the ALJ's December 22, 2010 opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), limited to: unskilled work only; understanding remembering, and carrying out simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting (Tr. 217). He found that although the claimant had no past relevant work to which she could return, she was nevertheless not disabled because there was work she could perform in the regional and national economy, *e. g.*, small parts assembler and motel maid (Tr. 219).

**Review**

The claimant contends that the ALJ erred: (i) by failing to follow the instructions of this Court in Case No. CIV-08-289-FHS-SPS to determine whether the claimant had a learning disability that qualified as an "other mental impairment" under Listing 12.05C; (ii) by finding that the claimant did not satisfy the criteria of Listing 12.05C; and (iii) by failing to properly develop the record. Because the ALJ *did fail* to follow the instructions of this Court in Case No. CIV-08-289-FHS-SPS, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

At step three of the sequential analysis the ALJ must determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. In so doing the ALJ must discuss the evidence and explain why the claimant is not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986). In both this case and in Case No. CIV-08-289-FHS-SPS, a critical issue is whether the claimant should be found disabled at step three under Listing 12.05C, the purpose of which "is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects h[er] work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). In order to satisfy Listing 12.05C, a claimant must first meet the "capsule definition," which requires that the claimant exhibit "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. There are two additional requirements: "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id.*

The ALJ specifically found in Case No. CIV-08-289-FHS-SPS that the claimant met the capsule definition of Listing 12.05C and had a valid verbal IQ score of 68. But the ALJ concluded that the claimant did not meet Listing 12.05C because she did not

have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." In reaching this conclusion, the ALJ considered the claimant's depression but found it insufficient as an "other mental impairment" to satisfy Listing 12.05C. The ALJ did not, however, consider whether evidence showing that the claimant had a learning disability might satisfy the listing. The Court therefore reversed the decision of the Commissioner and remanded the case so the ALJ could consider such evidence.

In his written opinion in this case, the ALJ acknowledged this Court's instructions in Case No. CIV-08-289-FHS-SPS: "Pursuant to the District Court remand order, the Appeals Counsel has directed the undersigned to consider whether the claimant had a learning disability sufficient to qualify as 'other mental impairment' under 12.05" (Tr. 212). Unfortunately, the ALJ failed follow these instructions. His step three analysis as to Listing 12.05C consisted of the following:

> While the claimant does have scores of Verbal 68, which puts her within the range, she does not have any other physical or mental impairment imposing an additional and significant work-related limitation of function. Her discrete ailments have been treated and resolved. The consultative examination also concluded the claimant had borderline intellectual functioning, performance skills in normal range, reading skills at primary level. The claimant can do simple math and follow instructions.

(Tr. 215). In particular, he did not discuss any of the evidence pertinent to the claimant's learning disability (or even mention a learning disability) in concluding that the claimant did "not have any other physical or mental impairment imposing an additional and

significant work-related limitation of function." It is thus impossible to determine if the ALJ found that the claimant had a learning disability that imposed no significant work-related limitations, or no learning disability at all.[3] Indeed, it is impossible to determine if the ALJ considered the issue at all, since he never mentioned it after noting why Case No. CIV-08-289-FHS-SPS had been remanded.

The Commissioner presented creditable arguments in Case No. CIV-08-289-FHS-SPS that there was sufficient evidence in the record to support the conclusion of the ALJ that the claimant did not meet Listing 12.05C. The Commissioner has done likewise in this case. But the Court once again declines to adopt any "post-hoc rationalization" of the Commissioner's decision. *See e. g., Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."), *citing Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this *post hoc* effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). The

---

[3] The evidence as to whether the claimant had a learning disability was mixed. For example, the claimant underwent an intra-cognitive discrepancy analysis on November 16, 2005 to determine whether she had a learning disability, but the evaluator found that the claimant did not (Tr. 163). On the other hand, Dr. Sydney Pepper, Ph.D. conducted an examination of the claimant's intellectual functioning on February 9, 2006, including the Wechsler Adult Intelligence Scale-III (WAIS-III), Wide Range Achievement Test-3, Key Math, and Bender Gestalt (Tr. 140). She scored 68 for Verbal IQ, 92 for Performance IQ, and a Full Scale IQ of 77 on the WAIS-III, placing her in the borderline intellectual functioning range (Tr. 140). Dr. Pepper noted that her Bender-Gestalt reproductions were "consistent with a learning disability" (Tr. 140). Further, a state agency physician reviewed the claimant's records and found that she had a learning disability (Tr. 148).

evidence as to the nature and extent of the claimant's learning disability is mixed, and as the Court noted in Case No. CIV-08-289-FHS-SPS, "this Court cannot provide factual findings for the decision that the ALJ did not himself make . . . The ALJ will simply have to address this question himself on remand." *See* Docket No. 26-2, p. 7. That remains to be done on remand in this case. *See, e. g.*, *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2000) ("Although we review the ALJ's decision for substantial evidence, 'we are not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).

Because the ALJ failed to consider whether the claimant had a learning disability sufficient to qualify as an "other mental impairment" under Listing 12.05C as the Court instructed in Case No. CIV-08-289-FHS-SPS, the decision of the Commissioner must be reversed and the case remanded for the proper analysis.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma